UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARTEZ ROSEMAN WOODS,

Plaintiff,

v.                                                    CAUSE NO. 3:24-CV-936 DRL-SJF

MARNE JUESTEL-OCHS *et al.*,

Defendants.

OPINION AND ORDER

Martez Roseman Woods, a prisoner without a lawyer, filed a complaint containing unrelated claims. ECF 4. Mr. Woods alleges that he's receiving inadequate medical care at Indiana State Prison for two conditions: an open wound on his palm and cysts in his testicles. He's suing nine defendants—Nurse Marne Juestel-Ochs, Sherri Fritter, Ron Neal, Jennifer Selke, Jaiden Fritz, Diane Thews, Patricia Harris, Alicia Wildfang, and Mark Newkirk—regarding his allegedly inadequate medical care. He's also suing Bessie Leonard because she returned documents that he submitted for electronic filing without filing them, depriving him of prompt access the courts.

Mr. Woods may not sue different defendants based on unrelated events. "Unrelated claims against different defendants belong in different suits[.]" *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). When a *pro se* prisoner files a suit with unrelated claims, the court has several options. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Generally, this court notifies the plaintiff and allows him to decide which claim (or related claims)

to pursue in the instant case—as well as to decide when or if to bring the other claims in separate suits. *Id.* Here, Mr. Woods asserts that several defendants are responsible for his unmet medical needs and that Bessie Leonard prevented him from accessing the court. Due to the nature of his allegations, the court will limit this case to his allegations regarding inadequate medical care and will dismiss his allegations that Bessie Leonard interfered with his right to access the courts. *Id.* ("A district judge [can] solve the problem [of improper joinder] by . . . dismissing the excess defendants under Fed. R. Civ. P. 21.").

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

With his complaint, Mr. Woods attached 240 pages of exhibits detailing the medical care he has received since December 2021; and, in his complaint, he singles out a few encounters with medical staff that he alleges demonstrate he is receiving inadequate care. He complains about the treatment he has received for an open wound on his palm and a cyst in his testicles, which he says he has had since 2022. He contends that these conditions cause him extreme pain "from the crown of his head to the bottom of his feet." ECF 4 at 7. He indicates he feels "things crawling on his head, heart, neck, back, spine, stomach, testicles, and everywhere else on his body." *Id.*

In the complaint, Mr. Woods details a medical visit with Nurse Marne Juestel-Ochs, NPN-ARPN, on June 3, 2024. He explained to the nurse his conditions and symptoms and the limitations the conditions have caused him. He told her that he had been diagnosed with Beta Hymolytic Streptococcus Group B.[1] Many of his lab tests since 2021 have been abnormal. He explained to Nurse Juestel-Ochs that, to the best of his knowledge, these tests have not been reviewed comprehensively, and he believed that a comprehensive review would reveal that he needed immediate emergency medical treatment. Nurse Juestel-Ochs prescribed Mr. Woods amoxicillin, a medication that he says had been prescribed three times before,[2] and ordered an ultrasound of his testicles, which he believes was redundant because previous ultrasounds had already been performed.

On July 22, 2024, Mr. Woods communicated with Health Services Administrator (HSA) Sherri Fritter. He described the June 3, 2024 meeting with Nurse Juestel-Ochs to HSA Fritter. She said that there wasn't anything she could do about his conditions, but she would check into the encounter with Nurse Juestel-Ochs. When HSA Fritter delivered medication that night, she explained to Mr. Woods that his medications included something to treat H. Pylori,[3] an infection that was identified in his stool sample. HSA

---

[1] "Group B strep (streptococcus) is a common bacterium often carried in the intestines or lower genital tract." It is "usually harmless in healthy adults" but can be harmful for newborns, adults with certain chronic medical conditions, such as diabetes or liver disease, or older adults. https://www.mayoclinic.org/diseases-conditions/group-b-strep/symptoms-causes/syc-20351729 (last viewed Jan. 28, 2025).

[2] In this instance, amoxicillin was prescribed to address dental pain. ECF 43.

[3] H. pylori is short for helicobacter pylori. When H. pylori infects the stomach, it can cause peptic ulcers, but most people with H. pylori infection have no symptoms. When a patient has signs or

3

Fritter told Mr. Woods that Nurse Juestel-Ochs had just put the order in for the medications, though he later learned that Nurse Juestel-Ochs placed the order on July 16, 2024, and it took six days for him to actually receive the medication. He feels the delay in treating H. Pylori shows deliberate indifference to his suffering.

In addition, Mr. Woods complains that the medication used to treat his H. pylori infection was amoxicillin—the same medication that had previously been given to treat his hand, epididymal cyst, or both (it isn't clear from the complaint). Mr. Woods reported to HSA Fritter that, when amoxicillin was given in the past, his symptoms were worse after taking it. HSA Fritter told Mr. Woods that they could talk about his symptoms after he finished this round of amoxicillin. When he asked HSA Fritter about treating the wound on his palm and his epididymal cysts, she indicated that these conditions would need to be addressed later.

On October 10, 2024, Mr. Woods learned that Jennifer Selke had become the Health Services Administrator. Mr. Woods alleges he explained his conditions and pain to her, and she didn't grant him emergency medical attention or even any medical attention at all. He was, however, seen that same day by Tanya Hoardley, a member of the medical staff who is not a defendant here. That meeting was to conduct an annual health wellness check. Mr. Woods described his conditions and symptoms to her, but Ms. Hoardley said that there was nothing she could do and instructed him to fill out a healthcare request form to be seen by a provider for those complaints.

---

symptoms of peptic ulcer, they will be tested for H. pylori and, if present, treated. https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Jan. 28, 2025).

Mr. Woods also asserts that Jaiden Fritz altered medical records to downplay the seriousness of his medical conditions and deny him adequate medical treatment. It's unclear what information Mr. Woods believes was altered or why he believes Jaiden Fritz altered it. He indicates that HSA Jennifer Selke is aware that Mr. Woods believes Jaiden Fritz altered his medical records.

On October 17, 2024, Mr. Woods saw Diane Thews. He showed her his wound and described the pain he experiences. Ms. Thews previously had ordered blood, fecal, and urine tests on August 1, 2024 and September 5, 2024, but they hadn't yet taken place by the October 17 visit. Ms. Thews told Mr. Woods that Patricia Harris would be the one to schedule those tests, and she would look into why they hadn't been scheduled.

The exhibits Mr. Woods submitted with his amended complaint indicate that he believes the seemingly unrelated problems with his palm and testicles are both caused by a parasite infection. *See* ECF 4-1 at 16-20, 22, 25, 43, 69-86, 138, 150, 198, 220, 237. Notes from the June 3, 2024 visit with Nurse Juestel-Ochs reflect her understanding that Mr. Woods is an illicit drug user and has believed before that he has been infected with a parasite when actively using. *Id.* at 43. In addition, Mr. Woods describes constant thirst and hunger, a worm-like grey thing that crawled out of the corner of his eye, a feeling that something is coming out of his stomach and latching onto his heart, and a feeling that his penis is trying to "suck in the air like it is trying to eat." *Id.* at 69-80. He feels that whatever is living inside of him doesn't like it when he attends to his hygiene. *Id.* The 240 pages of exhibits also show that the encounters with the defendants outlined in the

complaint are far from a complete summary of the provider visits and treatment Mr. Woods has received for his conditions. *See* ECF 4-1.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively seriously medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The deliberate indifference standard imposes a "high hurdle," requiring a showing "approaching a total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

A prisoner isn't required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But because there isn't one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation and quotations omitted). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment

does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotations and citation omitted). Furthermore, inmates are "not entitled to demand specific care," *Walker*, 940 F.3d at 965 (citation omitted), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Eighth Amendment does not require that prisoners receive unqualified access to health care") (citation and quotations omitted). Rather, they're entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

This isn't the first time Mr. Woods has brought a lawsuit alleging inadequate medical care related to what he believes is a parasite infection. In *Woods-Macon[4] v. Indiana Dept. of Corr.*, 3:22-CV-442-DRL-MGG (N.D. Ind. decided June 27, 2022), he made similar allegations. In that case, the court concluded that Mr. Woods had alleged mere negligence, which isn't sufficient to allow his claims to proceed:

> Mr. Woods/Macon has, at best, alleged that the various medical staff involved in his care were negligent. Mr. Woods/Macon is not a medical provider and cannot determine what tests are appropriate or demand that those tests be performed. He has not pleaded facts from which it can be plausibly inferred that any medical defendant substantially departed from an accepted professional judgment, practice, or standard or did not base their decisions on their medical judgment, even if flawed. Accordingly, he cannot proceed against Provider Diane, Nurse Lacey R. Gorske, Todd Wolford, Dr. Martin, Dr. Marthakis, or Diane Thews.

---

[4] Mr. Woods has brought lawsuits using several variations of his last name.

*Id.* at ECF 7.

The same is true here. Mr. Woods has received regular medical care for his conditions in the form of provider visits, testing, and medications. His complaints have been investigated. His hand infection has been assessed and treated.[5] ECF 4-1 at 13, 21-23. His group B. Streptococcus has been treated. *Id.* at 25-28. His H. pylori infection has been treated. *Id.* at 45-46. He has had ultrasound testing performed on his testicles, and his condition is being monitored. *Id.* at 4, 10, 13, 15, 43.

To the extent Mr. Woods is alleging that the medical staff misdiagnosed him or isn't providing constitutionally adequate treatment for the parasite he believes he has, this claim cannot proceed because there is no basis for finding that any defendant was deliberately indifferent to Mr. Woods' concerns regarding a parasite infection. When Mr. Woods expressed his concerns regarding parasites, he was tested for parasites. *Id.* at 43.

Though Mr. Woods may desire more or different health care, he hasn't alleged facts from which it can be inferred that any defendant responsible for his medical care has been deliberately indifferent. The few delays he focuses on in his complaints do not amount to more than negligence in light of the overall course of his healthcare, and he does not point to any harm caused by the delays. For these reasons, he cannot proceed against Nurse Marne Juestel-Ochs, HSA Sherri Fritter, HSA Jennifer Selke, Jaiden Fritz, Diane Thews, or Patricia Harris.

---

[5] Notes from September 26, 2022 document a "pinhole sized mark on the palm of his left hand that he states had puss come out of it last week." ECF 4-1 at 13. It was described as "healed without erythema or drainage noted." *Id.* Notes from October 18, 2022 document a "pin sized discoloration" without redness or drainage. *Id.* at 22-23. A note dated October 22, 2022 indicate he was provided with antibiotic ointment. *Id.* at 21.

Mr. Woods also notes dissatisfaction with grievance processing and responses. Throughout his complaint, he alleges that he submitted several grievances and letters about his medical issues to Grievance Specialist Alicia Wildfang, Executive Assistant Mark Newkirk, and Warden Ron Neal, but none of them responded. Mr. Woods has no constitutional right to access the grievance process. See *Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed against Grievance Specialist Alicia Wildfang, Executive Assistant Mark Newkirk, or Warden Ron Neal on any claim related to how his grievances or requests for grievance appeal forms were handled.

Mr. Woods also filed a motion seeking a temporary restraining order or preliminary injunction. ECF 5. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the complaint doesn't state a claim, so Mr. Woods can't demonstrate that he's likely to succeed on the merits. His motion seeking a temporary restraining order or preliminary injunction (ECF 5) will be denied.

If Mr. Woods believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he

usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DENIES Martez Roseman Woods' Motion for Preliminary Injunction (ECF 5);

(2) DISMISSES Martez Roseman Woods' claims against Bessie Leonard for interfering with his right to access the courts pursuant to Federal Rule of Civil Procedure 21;

(3) GRANTS Martez Roseman Woods until **February 28, 2025**, to file an amended complaint; and

(4) CAUTIONS Martez Roseman Woods that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint doesn't state a claim for which relief can be granted.

SO ORDERED.

January 29, 2025                                   *s/ Damon R. Leichty*
                                                   Judge, United States District Court

10