UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARTEZ ROSEMAN WOODS,

    Plaintiff,

    v.                                             CAUSE NO. 3:24-CV-936 DRL-SJF

MARNE JUESTEL-OCHS *et al.*,

    Defendants.

OPINION AND ORDER

Martez Roseman Woods, a prisoner without a lawyer, filed a complaint containing unrelated claims. ECF 4. This court limited Mr. Woods' case to claims regarding allegedly inadequate medical care at Indiana State Prison for two conditions: an open wound on his palm and cysts in his testicles. ECF 9. His claims against Bessie Leonard based on an alleged denial of access to the court's were dismissed pursuant to Federal Rule of Civil Procedure 21. *Id.* Because Mr. Woods' complaint didn't state a claim based on denial of medical care, he was granted leave to amend his complaint. *Id.* Mr. Woods filed an amended complaint (ECF 12), and three days later he filed a different amended complaint (ECF 14). "[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward [b]ecause a plaintiff's new complaint wipes away prior pleadings[.]" *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Thus, only Mr. Woods' March 13, 2025 amended complaint is before the court for consideration. ECF 14.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who's immune from such relief.

In his amended complaint, Mr. Woods names nine defendants: Nurse Marne Juestel-Ochs, Sherri Fritter, Warden Ronnie Neal, Jennifer Selke, Jaiden Fritz, Tayna Hardley, Diane Thews, Patricia Harris, and Bessie Leonard. He asserts essentially the same facts as those included in his earlier complaint. He alleges that he has received inadequate medical care for an open wound on his palm and cysts in his testicles since late 2021 or early 2022. He experiences "extreme – severe – serious sharp pains that shoot throughout [his] entire body every day (that started by the open wound / hole on [his] left palm (that has been open since 2022 and hasn't closed))." ECF 14 at 5. Mr. Woods also asserts that the cysts in his testicles cause pain to shoot throughout his body. He asks that the court order that he "be sent to an outside specialist for a MRI, cat scan, skin biopsy, spinal tap, full body ultrasound, and any appropriate test for the circumstances" and that he be "treated for the findings." ECF 14 at 6. He claims generally that his medical care has been subject to delays and that he has been treated with medications that haven't been effective in managing his symptoms. More specifically, he complains that he has been prescribed antibiotics on several occasions and, while his symptoms may initially

2

improve while taking them, when the medication is stopped the symptoms recur and become even worse than before he took the antibiotics.[1] He indicates that, on a daily basis, "any exertion of [his] body shoots extreme – severe – serious pain throughout [his] entire body and puts an extreme pressure on [his] heart and [his] other organs such as [his] brain and testicles, and the pressure is so intense that [he] can't do a single push up without [his] heart feeling as though it will burst through [his] chest." ECF 14 at 7. Even getting dressed is painful.[2] He indicates he has "symptoms that steadily increased and worsened over time dating back to 2022 until current date" with "[t]he most recent symptoms being [his] body now moves without [him] commanding it to and when this happens it is always associated with feeling thing even more in that area and also extreme – severe – serious pain all over [his] body." ECF 14 at 11. Due to his pain and sense that he isn't being taken seriously, he suffers from suicidal and homicidal thoughts.

As with Mr. Woods' earlier complaint, he describes the nature of his conditions and the nature of his dissatisfaction generally, and then he singles out a few encounters with medical staff that he alleges demonstrate he's receiving inadequate care.

---

[1] Mr. Woods seems to complain both that the antibiotics are ineffective and that they haven't been prescribed often enough. He notes that the medical providers "have not once prescribed me anti-biotics or any medications in regular intervals despite my constant complaints that the anti-biotics were ineffective and actually made me feel worse over time, once prescription ended." ECF 14 at 8.

[2] Mr. Woods' amended complaint notes that his "medical conditions have evolved from beta-hemolytic streptococcus group B to H. Pylori antigen, and now a urinary tract infection." ECF 14 at 8. It's unclear what these conditions have to do with either the wound on Mr. Woods' palm or the cysts in his testicles.

Mr. Woods details a medical visit with Nurse Marne Juestel-Ochs, NPN-ARPN, on June 3, 2024. He explained to Nurse Juestel-Ochs how the wound on his hand started and the symptoms he associates with this wound. He described the cysts and the pain he associates with that medical condition too. He explained to her that his symptoms cause him to experience extreme pain "from the crown of his head to the bottom of his feet." ECF 14 at 14. He also feels "things crawling in [his] head, heart, neck, back, spine, stomach, testicles, and everywhere else on his body." *Id.* He described the limitations the conditions have caused him. He told her that he'd been diagnosed with Beta Homolytic Streptococcus Group B[3] and many of his lab tests since 2021 have been abnormal. He explained to Nurse Juestel-Ochs that – to the best of his knowledge - these tests haven't been reviewed comprehensively, and he believed that a comprehensive review would reveal that he needs immediate emergency medical treatment. Nurse Juestel-Ochs prescribed Mr. Woods amoxicillin, a medication that he says had been prescribed three times before, and ordered an ultrasound of his testicles, which he believes was redundant because previous ultrasounds had already been performed.

On July 22, 2024, Mr. Woods communicated with Health Services Administrator (HSA) Sherri Fritter. He described the June 3, 2024 meeting with Nurse Juestel-Ochs to HSA Fritter. He described both the wound on his hand and the cysts and the pain they cause. He expressed his belief that the treatment he had received from Nurse Juestel-Ochs

---

[3] "Group B strep (streptococcus) is a common bacterium often carried in the intestines or lower genital tract." It is "usually harmless in healthy adults" but can be harmful for newborns, adults with certain chronic medical conditions, such as diabetes or liver disease, or older adults. https://www.mayoclinic.org/diseases-conditions/group-b-strep/symptoms-causes/syc-20351729 (last visited Oct. 10, 2025).

4

wasn't adequate. HSA Fritter said that there wasn't anything she could do about his conditions, but she would check into the encounter with Nurse Juestel-Ochs. When HSA Fritter delivered medication that night, she explained to Mr. Woods that his medications included something to treat H. Pylori,[4] an infection that was identified in his stool sample. HSA Fritter told Mr. Woods that Nurse Juestel-Ochs had just put the order in for the medication, though he later learned that Nurse Juestel-Ochs placed the order on July 16, 2024, and it took six days for him to receive the medication. He feels this delay in treating H. Pylori shows deliberate indifference to his suffering, but Mr. Woods doesn't explain how his H. Pylori infection is linked to either the wound on his hand or the cysts in his testicles.

In addition, Mr. Woods complains that the medication used to treat his H. pylori infection was amoxicillin; the same medication that had previously been given to treat his hand, cysts, or both (it isn't clear from the complaint). Mr. Woods reported to HSA Fritter that, when amoxicillin was given in the past, his symptoms were worse after taking it. When he asked HSA Fritter about treating the wound on his palm and his cysts, she indicated that these conditions would need to be addressed later.

On October 10, 2024, Mr. Woods learned that Jennifer Selke had become the Health Services Administrator. Mr. Woods alleges that he explained his conditions and pain to her, and she didn't grant him emergency medical attention or provide any medical

---

[4] H. pylori is short for helicobacter pylori. When H. pylori infects the stomach, it can cause peptic ulcers, but most people with H. pylori infection have no symptoms. When a patient has signs or symptoms of peptic ulcer, they will be tested for H. pylori and, if present, treated. https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Oct. 10, 2025).

5

attention at all. He was, however, seen later that same day by Tanya Hardley, who conducted an annual health wellness check. Mr. Woods described his conditions and symptoms to her, but Ms. Hardley said that there was nothing she could do for him at the wellness check and instructed him to fill out a health care request form to be seen by a provider for those complaints.

Mr. Woods also asserts that Jaiden Fritz altered medical records to downplay the seriousness of his medical conditions and deny him adequate medical treatment. It's unclear what information Mr. Woods believes was altered or why he believes Jaiden Fritz altered it. He indicates that HSA Jennifer Selke is aware that Mr. Woods believes Jaiden Fritz altered his medical records.

On October 17, 2024, Mr. Woods saw Diane Thews. He showed her his wound and described the pain he experiences. Ms. Thews previously ordered blood, fecal, and urine tests on August 1, 2024 and September 5, 2024, but the tests hadn't been done yet at the October 17 visit. Ms. Thews told Mr. Woods that Patricia Harris was responsible for scheduling those tests.[5]

---

[5] Mr. Woods didn't submit exhibits with his most recent amended complaint. However, exhibits submitted with his original complaint indicate that Mr. Woods believes the seemingly unrelated problems with his palm and testicles are both caused by a parasite infection. *See* ECF 4-1 at 16-20, 22, 25, 43, 69-86, 138, 150, 198, 220, 237. Notes from the June 3, 2024, visit with Nurse Juestel-Ochs reflect that Mr. Woods is a known illicit drug user and has had problems with thinking he's infected with a parasite when actively using. *Id.* at 43. Mr. Woods describes constant thirst and hunger, a worm-like grey thing that crawled out of the corner of his eye, a feeling that something is coming out of his stomach and latching onto his heart, a feeling that his penis is trying to "suck in the air like it is trying to eat." *Id.* at 69-80. He feels that whatever is living inside of him doesn't like it when he attends to his hygiene. *Id.* The 240 pages of exhibits also show that the encounters with the defendants outlined in the amended complaint are far from a complete summary of the provider visits and treatment Mr. Woods has received for his conditions. *See* ECF 4-1.

6

The amended complaint indicates that Mr. Woods saw Dr. Marthakis, who isn't a defendant in this action, in January 2025. She wrote a report on January 15, 2025, and the that report documents that both an ultrasound and echocardiogram were previously performed.

As already explained to Mr. Woods (ECF 9 at 6), under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively seriously medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is "serious" if it's one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The deliberate indifference standard imposes a "high hurdle," requiring a showing "approaching a total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

A prisoner isn't required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But because there isn't one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally

7

competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation and quotations omitted). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotations and citation omitted). Furthermore, inmates are "not entitled to demand specific care," *Walker*, 940 F.3d at 965 (citation omitted), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Eighth Amendment does not require that prisoners receive unqualified access to health care") (citation and quotations omitted). Rather, they're entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

This court's previous screening order (ECF 9 at 7) noted that this isn't the first time Mr. Woods has brought a lawsuit alleging inadequate medical care related to these conditions. In *Woods-Macon v. Indiana Dept. of Corr.*, 3:22-CV-442-DRL-MGG (N.D. Ind. decided June 27, 2022),[6] he made similar allegations. In that case, the court concluded that Mr. Woods had alleged mere negligence, which wasn't sufficient to allow his claims to proceed:

> Mr. Woods/Macon has, at best, alleged that the various medical staff involved in his care were negligent. Mr. Woods/Macon is not a medical provider and cannot determine what tests are appropriate or demand that

---

[6] Mr. Woods has brought lawsuits using several variations of his last name.

8

>those tests be performed. He has not pleaded facts from which it can be plausibly inferred that any medical defendant substantially departed from an accepted professional judgment, practice, or standard or did not base their decisions on their medical judgment, even if flawed. Accordingly, he cannot proceed against Provider Diane, Nurse Lacey R. Gorske, Todd Wolford, Dr. Martin, Dr. Marthakis, or Diane Thews.

*Id.* at ECF 7.

The court's previous screening order in this case noted that the same is true here. ECF 9 at 8. Though Mr. Woods hasn't provided a chronological summary of each time he was seen by a medical provider, his amended complaint makes clear that he was seen with some regularity for his complaints, tests were ordered and performed, and treatment was provided.

To the extent Mr. Woods is alleging that the medical staff misdiagnosed him or isn't providing constitutional adequate treatment for his conditions, this claim can't proceed because there is no basis for finding that any defendant was deliberately indifferent to Mr. Woods' concerns.

Though Mr. Woods may desire more or different health care, he hasn't alleged facts from which it can be inferred that any defendant responsible for his medical care has been deliberately indifferent to his suffering. Mr. Woods focuses on only a few encounters with medical providers. None of the factual allegations relating to these providers amounts to anything more than negligence. For these reasons, he can't proceed against Nurse Marne Juestel-Ochs, HSA Sherri Fritter, HSA Jennifer Selke, Jaiden Fritz, Tanya Hardley, Diane Thews, or Patricia Harris.

Mr. Woods also indicates that he's suing HSA Sherri Fritter, HSA Jennifer Selke, and Warden Ron Neal because they were supervisors, knew of his needs, and didn't remedy things to his satisfaction by ensuring that the tests he wanted performed were performed or that he was examined by an outside physician. ECF 14 at 9. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Supervisors can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). The complaint, however, doesn't allege facts that could support an inference that any of these defendants were aware that Mr. Woods had received inadequate care and turned a blind eye to that. They knew of his complaints and his dissatisfaction with his care, but that isn't the equivalent to being aware of deliberate indifference, especially where the record makes it clear the nature of his unusual complaints has been investigated. *See* footnote 5, *supra*.

Mr. Woods is also suing because Jaiden Fritz allegedly altered his medical record in some way. ECF 14 at 9. Additionally, he complains that she delayed responding to requests for medical records. ECF 14 at 10. These allegations don't implicate constitutional concerns.

Mr. Woods notes dissatisfaction with grievance processing and responses. Throughout his complaint, he alleges that he submitted several grievances and letters

10

about his medical issues to Grievance Specialist Alicia Wildfang,[7] Executive Assistant Mark Newkirk,[8] and Warden Ron Neal, but none of them responded. Mr. Woods has no constitutional right to access the grievance process. See *Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed against Warden Ron Neal on any claim related to how his grievances or requests for grievance appeal forms were handled.

Mr. Woods has also named Bessie Leonard as a defendant. His allegations against Ms. Leonard stem from her failure to promptly file his complaint in this case with the federal courts. The court's previous screening order (ECF 9 at 1) explained to Mr. Woods that he may not sue different defendants based on unrelated events. "Unrelated claims against different defendants belong in different suits[.]" *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). This court determined that Mr. Woods' claims that Bessie Leonard prevented him from accessing the court were unrelated to his other claims. His claim against Leonard was dismissed pursuant to Federal Rule of Civil Procedure 21. In the amended complaint, Mr. Woods explains that the complaint at issue is the same complaint being litigated here. Even if the claim against Leonard is sufficiently related to proceed in the same case, the allegations against her doesn't state a claim. A plaintiff may proceed on an access to court's claim

---

[7] Grievance Specialist Alicia Wildfang isn't listed as a defendant in the amended complaint.

[8] Executive Assistant Mark Newkirk isn't listed as a defendant in the amended complaint.

11

only if the defendants' conduct prejudices a potentially meritorious legal claim. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Here, the court has determined that Mr. Woods' claims aren't meritorious, and that precludes any access to court claim against Bessie Leonard.

Mr. Woods also renews his request for a preliminary injunction in his amended complaint. ECF 14 at 14. The court has already explained the preliminary injunction standard. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the complaint doesn't state a claim, and Mr. Woods therefore can't demonstrate that he's likely to succeed on the merits. Therefore, his motion seeking a temporary restraining order or preliminary injunction (ECF 5) will be denied.

When Mr. Woods brought claims based on similar allegations stemming from these same conditions in 2022, the case was dismissed because the court concluded that he had alleged mere negligence. *See Woods-Macon v. Indiana Dept. of Corr.*, 3:22-CV-442-DRL-MGG (N.D. Ind. decided June 27, 2022). When Mr. Woods filed his initial complaint in this case, the court reached the same conclusion. *See* ECF 9. He was offered an opportunity to amend, and he didn't materially alter his allegations. The amended

complaint doesn't state a claim. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

    For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

October 14, 2025                                   *s/ Damon R. Leichty*
                                                                  Judge, United States District Court